THOMAS FRAGA *v.* STATE COMPENSATION
COMMISSIONER *et al.*

(No. 9373)

Submitted October 20, 1942. Decided November 24, 1942.

KENNA, JUDGE, dissenting.

*Vickers & Thrift,* for appellant.
*Mahan, Bacon & White,* for appellee New River Co.

Fox, PRESIDENT:

The claimant here, Thomas Fraga, became an employee of the New River Company, as a coal loader, as early as the year 1923, and continued in that employment until he ceased work on May 12, 1941. From the 12th day of March, 1929, he worked continuously in what is known as the Whipple mine. He was examined by two physicians in June, 1941, and was then found to have silicosis in an advanced stage. On August 24, 1941, he filed his claim for compensation. On September 26, 1941, the Compensation Commissioner advised counsel that a hearing on non-medical questions should be held, and on this hearing testimony was taken on three separate occasions. On January 20, 1942, the Commissioner entered an order in which he found "that the claimant was not exposed to the inhalation of silicon dioxide dust in harmful quantities for a period of two years in the same employment in this State, as provided by Section 5, Article 6, Chapter 23 of the Code; it is therefore ordered that this claim be rejected in whole and closed * * *." Timely appeal was made to the Workmen's Compensation Appeal Board, and on April 11, 1942, the action of the Commissioner was affirmed. On May 18, 1942, we granted this appeal.

That claimant has silicosis is not questioned, nor is the fact that he was employed for more than two years, in the same employment, in this State, next preceding the date when he ceased work. The sole question presented is whether he was exposed to the inhalation of silicon dioxide dust in harmful quantities for a period of two years, and that question the Commissioner decided against claimant. The error alleged in the Commissioner's action, and that of the Appeal Board, is that prior to any final order of the Commissioner the case should have been referred to the medical board for investigation and report.

The position of the employer, The New River Company, is based upon the following language contained in Article 6, Section 5, Chapter 79, Acts of the Legislature, Reg. Sess., 1935, (1937 Michie Code, 23-6-5), which reads as follows:

"Provided, however, that compensation shall not be payable for the disease of silicosis, or death resulting therefrom, unless the employee has been exposed to the inhalation of silicon dioxide dust in harmful quantities over a period of not less than two years in the same employment in this state."

Its contention, as we understand it, is that this requirement is jurisdictional, and that the Commissioner had no right to take jurisdiction of the case until there was a clear showing that there has been such exposure for a period of two years. We think this contention is based upon some confusion as to the distinction between jurisdiction to hear a case, and the legal right to allow compensation after jurisdiction is assumed. In *Johnston* v. *Hunter,* 50 W. Va. 52, 40 S. E. 448, this Court held:

"There are numerous definitions of jurisdiction, the substance of all of which is the power to hear and determine a cause. * * * . That definition probably covers the full meaning of the term, for it may be elaborated in various ways and still retain the same meaning. Power or authority to hear and determine a cause implies the existence of a tribunal to exercise such power, and such tribunal cannot exist except by authority of law. There must be a court or tribunal with judicial power. This feature has not been overlooked in the many definitions given. 'Jurisdiction in courts is the power and authority to declare the law. The very word, in its origin, imports as much; it is derived from *juris* and *dico*—I speak by the law.' "

See also *Sperry* v. *Sanders, Judge,* 50 W. Va. 70, 40 S. E. 327; 14 Am. Jur. 363.

When claimant filed his claim, the Commissioner had jurisdiction to hear and determine the same. The fact that he was required, as a prerequisite to an award of compensation, to show that he had been exposed to the inhalation of silicon dioxide dust in harmful quantities for a period of two years, was not a matter which bore upon the jurisdiction of the Commissioner to hear and

determine the matter, but only on the question whether there should have been an award of compensation. Whether claimant had been so exposed had to be determined by someone having jurisdiction to make such determination, and who but the Commissioner could do so?

Having jurisdiction to pass upon the question, the first duty of the Commissioner was to hear the case upon the non-medical questions. Section 11 of Article 6, authorizes the Commissioner to pass upon certain questions, but does not limit him to the particular points mentioned. Subsection (c) authorizes the commissioner to ascertain "The employments, previous and subsequent to the employment out of which the claim arose, the duration thereof, and the exposure therein to the hazard of silicon dioxide dust", and he is authorized to determine other matters. Sections 12, 13, and 14 of Article 6 provide for the creation of a medical board, to be appointed by the compensation commissioner, its procedure and report. Section 14 provides that the report of the medical board shall, among other things, contain findings and conclusions as to whether "the claimant or the deceased employee has contracted such disease, whether or not the exposure in the employment, with said employer, was sufficient to have caused silicosis or to have injuriously aggravated an existing silicosis". In the same section it is provided that the report of the medical board shall be filed with the compensation commissioner, and that if neither party, within ten days after mailing of a copy of said report, makes objection thereto, the findings of the board on any medical question shall be taken to be "plenary and conclusive evidence of the findings and conclusions therein stated." It is further provided, in effect, that if objection is made a hearing shall be had and it necessarily follows that the compensation commissioner, upon a consideration of all the evidence and the report of the medical board, must finally determine the right to compensation.

While the report of the medical board, if objected to, is not final as to the matters reported by it, and the final decision thereon must rest with the compensation commissioner, we are of the opinion that this is a case where

reference to the medical board should have been made before there was a dismissal of the claimant's case. We do not mean to hold that there should be a reference by the commissioner to the medical board in all cases, but we are of the opinion that such procedure should be followed where there is a reasonable doubt on any medical question, and where an investigation thereof might tend to clarify any matter which might affect the final decision of the commissioner. We have here a case where, for approximately twenty years, claimant worked for one company as a coal loader, and in one of its mines for some twelve years, immediately preceding the date when he ceased work. He never did any other character of work to which his present state of health can be attributed. He has silicosis; and he must necessarily have contracted it while working for the employer in this case. True, he may have contracted the disease more than two years prior to the date he ceased work; but the statute apparently contemplates that even if he had contracted the disease more than two years before he ceased work, if during the last two years he was employed his condition was aggravated, he might still be entitled to compensation. Under the statute silicon dioxide dust must have existed in harmful quantities during the last two years the claimant worked, but it does not follow that even if an existing condition was aggravated, it was, as a matter of fact, due to silicon dust in harmful quantities. The aggravation might have been due to other causes such as the natural development of the disease. The situation developed by the record presents an unusual case, and the Commissioner, before dismissing the claim, should have resorted to every possible type of investigation to ascertain the true facts. The testimony taken at the hearing was confined largely, if not entirely, to conditions in the mine where claimant last worked. There was no medical testimony in the case, other than that establishing the existence of silicosis, and further medical testimony might and probably would have been useful. A diagnosis by specialists, trained in this line of work, might have cleared up many of the perplexities of the case. In our opinion, the statute

contemplates reference to the medical board in cases where the exercise of technical learning is calculated to clear up doubts.

We are of the opinion that the action of the Commissioner and the Appeal Board in dismissing claimant's case without a reference thereof to the medical board was erroneous, and, therefore, its action is reversed, and the case remanded to the Compensation Commissioner, with instructions to refer the same to the medical board for investigation and report.

*Reversed and remanded with directions.*

KENNA, JUDGE, dissenting:

I am of the opinion that under Section 5 of Chapter 79 of the Acts of 1935 (Michie's 1937 Code, 23-6-5) it was the purpose of the Legislature to restrict the claims that would be considered for compensation due to silicosis to that class of persons (1) whose condition is due to the nature of the occupations in which they have been employed at any time within one year previous to such disease; and (2) whose claim is made within one year of the last exposure to silicon dioxide in harmful quantities, provided that compensation shall not be payable to persons who have not been exposed to silicon dioxide in harmful quantities in the same employment over a period of not less than two years in this State. It seems clear to my mind that it was the legislative purpose to exclude all other persons as being ineligible to the class whose claims would be considered on the merits. Compensation for silicosis has barely entered upon its trial period with the hope that it may later be liberalized by the Legislature.

Section eleven of the act seems to require the Commissioner to "hear" all silicosis cases, and in each to file certain non-medical findings, including, but not restricted to, (a) whether employee was in fact employed by the employer "within one year prior to the filing of his claim; * * *." (c) The employments previous and subsequent to that out of which the injury upon which the

claim is based arose, and the exposure connected therewith * * *; (f) Date of the last injurious exposure.

While that part of the act which defines the class of sufferers from silicosis who may have their claims considered on the merits by the Compensation Commissioner is rather unartfully drawn and does not conform in terminology to section eleven requiring the Commissioner's non-medical findings, I am of the opinion that the substance of the entire act shows quite clearly that it was the purpose of the Legislature to have the Commissioner, before referring silicosis cases to the Medical Board, to first examine the facts in order to ascertain whether the employment of the claimant had been of such a nature as would fall within the scope of his statutory power to consider. An illustrative legal analogy, I believe, would be the consideration of a demurrer to a bill of complaint by a trial chancellor before referring the cause to a commissioner in chancery. Referring a silicosis case to the Medical Board before passing upon the eligibility of the claimant would be similar to considering a demurrer to a bill of complaint after the commissioner in chancery had filed a lengthy report upon the merits. I do not believe that the Legislature intended that unnecessary risk of energy and time.

It is true that the expressly required non-medical findings of the Commissioner do not include a report by him concerning the two years' exposure to silicon dioxide dust in harmful quantities in the same employment in this State, and that fact might be advanced against the theory that as a preliminary (non-medical) finding the Commissioner should ascertain whether the claimant belongs to the class made compensable by the fact without submitting that question to the Medical Board. In answer to that position, it may be stated that the expressly required non-medical findings of the Commissioner do cover the essentials prescribed by the body of the act as forming the class who may claim. However, the clause in question is not a part of the main provisions of the silicosis act.

It seems perfectly apparent to my mind that the Legislature's purpose was to include in the Commissioner's non-

medical findings all elements that go to make up the definition of an eligible claimant under the main provisions of the silicosis act, and if that be true it necessarily follows that the terms of the proviso, the use of which is to qualify the provisions of the main act, would necessarily be considered by the Commissioner in reaching his non-medical conclusions. The Legislature has not stated what shall be exposure to silicon dioxide in harmful quantities, but I think it was necessarily its purpose to have the recovery of compensation governed by a recognized standard to be ascertained by the Commissioner, and not to permit each case to rest upon the peculiar susceptibility of the claimant and variant surroundings. Otherwise, the silicosis fund becomes an insurer without a defined risk. I think that the act charges the Commissioner with the responsibility, after proper investigation, to discover what constitutes to the average individual an exposure to silicon dioxide in harmful quantities and, by the recognized rule of inclusion and exclusion, if need be under the guidance of this Court, to reach a settled rule by the decided cases.

I think that to attempt in this connection a distinction between doubtful cases and clear cases, and to require the Commissioner to refer doubtful cases to the Medical Board and in so doing to risk the commission of an error of judgment, is going to fail to simplify and, indeed, to have a tendency to confuse the practice before the Compensation Commissioner. We must not lose sight of the fact that the Compensation Commissioner is an administrative officer, and that, as such, it is necessary that certain set standards for his official conduct should be established and maintained. He is not a court in any sense of the word, and therefore, his statutory authority should perhaps not be spoken of and treated as jurisdictional, for while he has, along with all statutory officers, certain necessarily implied powers, unlike courts, he has none that are inherent. There are a number of complications that will result from requiring the Commissioner to refer doubtful cases involving his power to act to the Medical Board, one being the fact that the Medical Board's findings, unless excepted to within ten days, become final, and we thus

will have an auxiliary agency passing upon the powers of the principal to act; and another the fact that that finding includes an examination of the place of employment that can be conducted only by a field force, which the Commissioner has and the Medical Board has not. In my judgment, the greatly desired expeditious treatment of compensation cases will be materially impeded if the elastic practice of courts of chancery is attempted to be applied.

In my opinion the Commissioner should first pass upon the question of whether the claimant belongs to the class of persons who are entitled to invoke the provisions of the act. If his conclusion is in the negative, the claimant's remedy is by appeal to the Appeal Board. If the answer is in the affirmative, the next step is a reference to the Medical Board for the purpose of determining whether the claimant is suffering a disability due to silicosis and if so to what stage the disease has progressed and his proper class rating under the statute. Upon the incoming of their report, if not objected to, the Commissioner enters his final order based thereon and upon his own non-medical findings. If the report is objected to by either the employer or the employee, the Commissioner holds a hearing upon the questions thereby raised and either rejects or confirms the report and enters his final order accordingly. This, I believe, is a proper set standard to be followed by an administrative officer. I see no reason, provided by statute or otherwise, for involving three medical experts and their staff in deciding the nature and length of the claimant's employment over a period of not less than two years, in addition to reporting upon the claimant's physical condition.