241 S.E.2d 816 (1978)
Violet CHARLES
v.
STATE WORKMEN'S COMP. COMMR., and Eastern Associated Coal Corp.
Violet TACKETT
v.
STATE WORKMEN'S COMP. COMMR., and Union Carbide Corp.
Nos. 14017 and 14018.
Supreme Court of Appeals of West Virginia.
March 7, 1978.
*817 George G. Burnette, Jr., Charleston, for appellants.
Shaffer, Theibert, Ikner & Schlaegel, R. L. Theibert, Madison, for appellee (Eastern Associated).
Benjamin D. Tissue, Legal Division, Carbide, South Charleston, for appellee (Union Carbide).
HARSHBARGER, Justice:
These actions are appeals from two separate orders of the Workmen's Compensation Appeal Board denying appellants, Mrs. Violet Charles and Mrs. Violet Tackett, payment of the unpaid balances of permanent partial awards for occupational pneumoconiosis disability suffered by their deceased husbands, George Charles and James Tackett. There are no factual disputes.
*818 Mr. Charles and Mr. Tackett had filed claims and had been determined by the Workmen's Compensation Commissioner to be eligible for benefits. Both had been rated as to percent of disability by the Occupational Pneumoconiosis Board and both men died thereafter, before the Commissioner's formal award was made.
In Ferguson v. State Workmen's Compensation Commissioner, 152 W.Va. 366, 163 S.E.2d 465 (1968), this Court held that a widow was not entitled to receive her husband's workmen's compensation pneumoconiosis benefits if he died after his claim was filed but before the Commissioner made the award of benefits. The case interpreted W.Va.Code, 23-4-6(f)[1] as of 1968.
Later, our legislature amended Code, 23-4-6 to modify the Ferguson decision, and provided that what had theretofore been an intermediate step in Workmen's Compensation procedurethe Occupational Pneumoconiosis Board's ruling on the medical questions in each "black lung" casewould have the force and effect of the Commissioner's award for purposes of establishing dependents' entitlement.[2]
The obvious purpose of the amendment was to allow dependents to receive a deceased employee's benefits where, as was often the case, the internal workmen's compensation procedure was so burdened and lengthy that many claimants died before a final Commissioner's award was made.[3]
The act making the OPB findings an award became effective after Mr. Charles and Mr. Tackett filed their claims, but before they died. However, the Workmen's Compensation Appeal Board held that their widows' rights to recover the accrued employees' benefits were fixed by the law in effect when the employees filed: old 23-4-6 as interpreted in Ferguson.
Appellants contend that their claim is governed by Sizemore v. State Workmen's Compensation Com'r, W.Va., 219 S.E.2d 912 (1975), in which we held that the workmen's compensation statute in effect on the date of the injured employee's death, not that in effect on the date of his injury, governs his dependents' claim for death benefits under Code, 23-4-10.[4] The Appeal Board declined to apply Sizemore to these claims, reasoning:
We have considered the exact issue raised in this claim on several prior occasions. . . In our prior opinion, we held that the statute in effect on the date of last exposure controls and governs an occupational pneumoconiosis claim; that when the date of last exposure for the deceased employe[e] was prior to the enactment of the present provisions of Code 23-4-6(h), the statutory revisions were not applicable in the claims since amendments could not be applied retroactively in a Workmen's Compensation claim; and, therefore, denied payment of benefits to dependents on the strength of the findings of the Occupational Pneumoconiosis Board standing alone . . . [W]e were of the opinion and still remain of the opinion that the decision of Sizemore *819 v. Commissioner, Supra [sic] is not applicable as contended by the claimant widow in this claim . . . [T]he widow or dependent claim [23-4-10] is separate and apart from the claim of the deceased employee and does not involve accrued benefits which would have been payable to the deceased employee had he died after the entry of a final order. [Emphasis added.]
In Sizemore, Chief Justice Haden wrestled with prior inconsistent rulings by this Court about application of workmen's compensation laws as of date of injury or date of death. The resulting rule was succinctly stated in syllabus 2:
A workmen's compensation statute in effect at the date of an injured employee's death governs the deceased employee's dependents' claims for death benefits.
We see no reason to distinguish between benefits under Code, 23-4-10 and benefits under Code, 23-4-6. The former are for dependents, in their own right; the latter, for dependents, but accrued by the deceased employee. Whether one is called "a statutory extension of an injured employee's claim" or "a separate and distinct claim for dependent's benefits" is absolutely immaterial. Both depend upon there having been an injured or occupationally diseased employee, with dependents; and both provide for distribution of funds after death of the employee to such dependents. Whether the funds distributed come from accrued but unpaid money due to the employee, or from a separate account established to compensate dependents, is immaterial. Both are payable to dependents upon the happening of one event: the death of an "entitled" employee. The rationale in Sizemore is as valid for one as for the other.
The Appeal Board held that to apply Code, 23-4-6(h) to these claims would give the section retroactive effect. This is not correct.
As we said in syllabus point 3 in Sizemore, supra:
A law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage can it be considered to be retroactive in application.
Certainly, rights whose existence depend upon the happening of an event such as death, are not acquired or completed until the death occurs; nor are there fund obligations to the dependents until the happening of the event.
We conclude that under the facts of these cases the Appeal Board erred in failing to give effect to the 1974 amendments to Code, 23-4-6.
Finally, appellee Union Carbide Corporation argues that appellant Violet Tackett's failure to protest the Workmen's Compensation Commissioner's order of March 13, 1975, that dismissed James Tackett's claim without prejudice to the rights of his dependents, bars appellant's subsequent claim for unpaid benefits under Code, 23-4-6(g). We find this argument without merit. The Commissioner's dismissal of the decedent's claim was without prejudice to his dependents' subsequent claim for benefits payable under either or both Code, 23-4-10 and 23-4-6(g).
For the foregoing reasons, the orders of the Workmen's Compensation Appeal Board are reversed and the cases remanded for further action consistent with this opinion.
Reversed and remanded.
NOTES
[1] W.Va.Code, 23-4-6(f) then read:

Should a claimant to whom has been made a permanent partial award of from one percent to eighty-four percent, both inclusive, die from sickness or noncompensable injury, the unpaid balance of such award shall be paid to claimant's dependents as defined in this chapter, if any; such payment to be made in the same installments that would have been paid to claimant if living . . . .
[2] W.Va.Code, 23-4-6(h) states:

For the purposes of this chapter, a finding of the occupational pneumoconiosis board shall have the force and effect of an award.
[3] The statutory procedure for processing pneumoconiosis claims involved 1) an initial finding by the commissioner that claimant was a covered employee and eligible for benefits, 2) a medical finding of the existence and degree of pneumoconiosis by a separate occupation pneumoconiosis board, and 3) an award by the commissioner based upon the findings.
[4] W.Va.Code, 23-4-10 provided for benefits to be paid to injured employees' dependents, when employees died as a result of compensable injuries within certain specified time periods after the injuries; and also provided amounts to be paid to the dependents specified. The time period during which death must occur was six years when Sizemore was injured; was extended to ten years later. Sizemore died after six, but before ten years following his injury. Also, the amount of money payable to dependents was increased.